UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| GULF COAST BANK AND TRUST COMPANY *Plaintiff,* | * * * * | CASE NO.: 7:21-CV-62 |
| VERSUS | * * * | DISTRICT JUDGE: |
| TEXAS AMERICAN Rig Worx, LLC and AMANDA B. HAMILTON *Defendants.* | * * * | MAGISTRATE JUDGE: |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Gulf Coast Bank and Trust Company, to assert as follows:

## PARTIES

1.

Plaintiff, Gulf Coast Bank and Trust Company ("Gulf Coast"), is a full-service bank incorporated in the State of Louisiana with its principal place of business in Louisiana.

2.

Defendant, Texas American Rig Worx, LLC ("Rig Worx"), is a limited liability company organized under the laws of the State of Texas and which, upon information and belief, has its principal place of business at 317 (or 315) Sadie St., Odessa, Texas 79764, County of Ector.

3.

Defendant, Amanda Buchanan Hamilton (the "Guarantor"), is an individual over the age of majority and who, upon information and belief, is domiciled in the State of Texas, County of Parker.

## **JURISDICTION AND VENUE**

4.

Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

5.

Gulf Coast is a citizen of Louisiana because it is incorporated in Louisiana and has its principal place of business in Louisiana.

6.

Rig Worx is a citizen of Texas because its two sole members, Amanda Buchanan Hamilton and Michael Scott Hamilton, are domiciled in the State of Texas and thus citizens of Texas.

7.

Accordingly, complete diversity of citizenship exists.

8.

The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

9.

Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391.

10.

Rig Worx has its principal place of business in the County of Ector and thus would be subject to personal jurisdiction in the Western District of Texas, if this district were a separate State. Thus, Rig Worx resides in this district pursuant to 28 U.S.C. § 1391(d).

11.

Accordingly, because all Defendants are residents of Texas, and at least one Defendant resides in the Western District of Texas, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

### A. Rig Worx's Obligations Under the RPA

12.

On or around August 29, 2018, Rig Worx entered into a Receivables Purchase Agreement ("RPA") with Gulf Coast. A true and correct copy of the RPA is attached hereto as Exhibit "A."

13.

Under the RPA, Rig Worx was required to "offer to sell its Accounts to [Gulf Coast] as absolute owner, **with full recourse**." *See* Exhibit A at § 2.1.1.

14.

Accounts are defined under the RPA as "any accounts, contract rights, chattel paper (electronic or written) . . . general intangibles, and payment intangibles . . . and all documents, contracts, invoices and instruments evidencing or constituting the same and all security instruments and security agreements relating thereto, which are created, generated, acquired or otherwise owned by [Rig Worx] . . . and all cash and non-cash proceeds thereof, including any merchandise returned or rejected by, or repossessed from, Account Debtors." An Account Debtor is defined as "the obligor on an Account." *Id.* at 1.

15.

Gulf Coast retained sole discretion to determine which accounts to purchase. *Id.* at § 2.1.3.

3

16.

After execution of the RPA, Gulf Coast purchased certain Accounts which, upon information and belief, were due and owing to Rig Worx from accounts debtors, Lasso Drilling, LLC ("Lasso") and Ideal Completion Services, LLC ("Ideal"), including the invoices set forth on the Aging Report attached hereto as Exhibit "B" (the "Purchased Accounts").

17.

By virtue of its presentation of the Purchased Accounts to Gulf Coast for purchase under the RPA, Rig Worx represented and warranted to Gulf Coast that the Purchased Accounts were valid, due and owing, and constituted bona fide existing obligations of one (1) or more Account Debtors to Rig Worx.

18.

Gulf Coast subsequently learned, however, that the following outstanding invoices related to the Purchased Accounts were disputed as invalid and/or inaccurate (the "Disputed Invoices"):

a) Invoice numbered 1444 dated January 3, 2020 in the amount of $87,740.00 owing by account debtor, Lasso;

b) Invoice numbered 1454 dated February 7, 2020 in the amount of $78,750.00 owing by account debtor, Ideal; and

c) Invoice numbered 1484 dated February 28, 2020 in the amount of $221,133.69 owing by account debtor, Lasso.

19.

Specifically, Gulf Coast sent a letter to Lasso on May 13, 2020 (the "Lasso Demand Letter") and Ideal on July 24, 2020 (the "Ideal Demand Letter"), formally demanding that Lasso

and Ideal make payment to Gulf Coast on the respective Disputed Invoices for which they are liable. True and correct copies of the Lasso Demand Letter and Ideal Demand Letter are attached hereto as Exhibits "C" and "D," respectively.

20.

On August 5, 2020, Gulf Coast filed suit against Lasso in the Civil District Court for the Parish of Orleans, State of Louisiana to recover the amounts which, upon information and belief, Gulf Coast perceived as due and owing by Lasso on the Disputed Invoices (the "Lasso Suit").

21.

In response to the Lasso Demand Letter, Ideal Demand Letter, and Lasso Suit, Lasso and Ideal (collectively, the "Disputed Invoice Account Debtors") informed Gulf Coast of the invalid and inaccurate nature of the Disputed Invoices, which include but are not limited to (i) invoices for services not provided to the Account Debtor; (ii) invoices for services only partially provided to the Account Debtor, yet billed at the full rate; and (iii) invoices for work provided to the Account Debtor which are subject to warranty rights.

22.

While the Disputed Invoice Account Debtors disputed whether the Disputed Invoices were "due and owing" to Gulf Coast based on Rig Worx's conduct, the parties entered into a Settlement Agreement with Gulf Coast on October 5, 2020 under which (1) Lasso agreed to pay and did, in fact, pay the full amount in connection with invoice numbered 1444 ($87,740.00), and (2) Ideal agreed to pay and did, in fact, pay the full amount in connection with invoice numbered 1454 ($78,750.00). Lasso did not agree, however, to pay any amount owed in connection with invoice numbered 1484 ($221,133.69). To date, this amount remains unpaid (the "Unpaid Lasso Invoice").

5

23.

Pursuant to the Settlement Agreement, Gulf Coast agreed to dismiss and did, in fact, dismiss the Lasso Suit. A true and correct copy of the Dismissal Judgment dated October 15, 2020 is attached hereto as Exhibit "E."

24.

Regardless of the partial payment made by the Disputed Invoice Account Debtors, however, Rig Worx breached certain representations and warranties required to be made to Gulf Coast under the RPA. *See* Exhibit A at § 11.1.

25.

Rig Worx represented and warranted to Gulf Coast that "all Purchased Accounts are and will remain: (i) bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of [Rig Worx's] business; and (ii) unconditionally owed and will be paid to [Gulf Coast] without defenses, disputes, offsets, counterclaims, or rights of return or cancellation." *Id.* at §§ 11.1.2, 11.1.3.

26.

However, for the non-exclusive reasons set forth above, the Disputed Invoices sold to Gulf Coast were not "bona fide existing obligations" for services provided by Rig Worx to the Disputed Invoice Accounts Debtors. Neither were the Disputed Invoices "unconditionally owed" to Gulf Coast. To the contrary, the Disputed Invoices were heavily disputed by the Disputed Invoice Account Debtors and subject to various defenses, requiring Gulf Coast to bring the Lasso Suit and resulting in losses to Gulf Coast in the amount of the Unpaid Lasso Invoice, as well as attorney's fees and costs associated with pursuing payment on the Disputed Invoices and bringing the Lasso Suit.

27.

Upon information and belief, Rig Worx became aware that the Disputed Invoice Account Debtors disputed, or would inevitably dispute, the Disputed Invoices for the reasons set forth above, but Rig Worx did not disclose these facts to Gulf Coast.

28.

Thus, Rig Worx breached the representations and warranties set forth in Sections 11.1.2 and 11.1.3 of the RPA.

29.

Rig Worx also represented and warranted to Gulf Coast that it would "immediately notify [Gulf Coast] in writing (i) upon it acquiring knowledge of the occurrence of an Ineligibility Event . . ." *Id.* a § 11.1.

30.

An Ineligibility Event is defined as "the occurrence of any of the following . . . with respect to any Purchased Account: (i) the payment of such Purchased Account has been disputed by the Account Debtor obligated thereon (with [Gulf Coast] being under no obligation to determine the bona fides of such dispute); [or] (ii) a breach by [Rig Worx] of any of its warranties under Section 11 hereunder." *Id.* at § 9 (requiring Rig Worx to "notify [Gulf Coast] promptly of . . . all disputes concerning any Purchased Account.")

31.

Upon information and belief, Rig Worx knew of the occurrence of an Ineligibility Event because it was aware that one (1) or more of the Disputed Invoice Account Debtors disputed the Disputed Invoices and that it breached the representations and warranties set forth in Section 11

of the RPA. Yet Rig Worx failed to immediately notify Gulf Coast in writing of the Ineligibility Event.

32.

Thus, Rig Worx also breached the representations and warranties set forth in Section 11.1.1 of the RPA.

33.

Under the RPA, Rig Worx agreed to "indemnify, defend and hold [Gulf Coast] . . . harmless from and against all loss, claims and damages arising from any breach of any warranty or representation hereunder." *Id.* at § 14.1. As such, Rig Worx must indemnify Gulf Coast for any and all losses, claims and damages arising from Rig Worx's breaches of the representations and warranties set forth in Sections 11.1.1, 11.1.2, and 11.1.3 of the RPA, including, but not limited to the full amount of the Unpaid Lasso Invoice, as well as attorney's fees and costs associated with pursuing payment on the Disputed Invoices and bringing the Lasso Suit.

34.

The RPA defines an "Event of Default" as, among other things, when "(a) [Rig Worx] defaults in the payment of any Obligations . . . (e) [Gulf Coast] for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations." *Id.* at § 12.1. "Obligations" are defined under the RPA as "all present and future obligations owing by [Rig Worx] . . . to [Gulf Coast] whether or not for the payment of money . . . ." *Id.* at § 1.

35.

Rig Worx breached its obligations under the RPA by (1) continuing to warrant to Gulf Coast that the Disputed Invoices were valid, unconditionally owing, undisputed, and not subject

8

to defenses, despite later having actual or constructive knowledge to the contrary; and (2) failing to immediately notify Gulf Coast in writing of a known Ineligibility Event. For these same acts and omissions, Gulf Coast deems itself insecure with respect to Rig Worx's ability to repay or perform its obligations under the RPA. Thus, Rig Worx is in default of the RPA.

36.

Following an Event of Default, the RPA provides that "in addition to any rights [Gulf Coast] has under this Agreement or applicable law, [Gulf Coast] may immediately terminate this Agreement, at which time all Obligations shall become immediately . . . due and payable without notice." *Id.* at § 12.2.1.

37.

Additionally, the RPA provides that Gulf Coast "may require that [Rig Worx] repurchase, by payment of the unpaid Face Amount thereof together with any unpaid fees, Fixed Discounts or Variable Discounts relating to the Purchased Account on demand . . . an[y] of the following Purchased Accounts: . . . [1] any Purchased Account, the payment of which has been disputed by the Account Debtor obligated thereon, [Gulf Coast] being under no obligation to determine the bona fides of such dispute . . . [2] all Purchased Accounts upon the occurrence of an Event of Default . . . [3] any Purchased Account for which [Rig Worx] has breached any representation or warranty under Section 11 hereunder." *Id.* at §§ 4.1.1, 4.1.2, 4.1.5. The "Face Amount" is defined as "the amount shown as due on an Account." *Id.* at § 1. Because Rig Worx is in default of the RPA, Gulf Coast is entitled to demand that Rig Worx repurchase all of the Purchased Accounts, including Unpaid Lasso Invoice.

38.

Pursuant to the RPA, Rig Worx "irrevocably authorize[d] [Gulf Coast] . . . at [Rig Worx's] sole expense, to exercise at any times [sic] in [Gulf Coast's] . . . discretion all or any of the following powers until all of the Obligations have been paid in full: . . . (b) take or bring, in the name of [Gulf Coast] or [Rig Worx], all steps, actions, suits or proceedings deemed by [Gulf Coast] necessary or desirable to effect collection of or other realization upon the accounts and other Collateral . . . ." *Id.* at § 7.1.

39.

Further, when an Event of Default occurs, the RPA provides that Gulf Coast may also "commence and effect collection of any and all Collateral by whatever means [Gulf Coast] deems reasonable and necessary, without recourse to judicial proceedings against [Rig Worx]." *Id.* at § 12.2.3; *see also id.* at § 1 (defining "Collateral" as "all now owned and hereafter acquired (i) accounts, chattel paper, other Accounts, instruments (including promissory notes), investment property, documents, and general intangibles; including without limitation all reserve accounts, residual payments, credits and reserves, and letter-of-credit rights, (ii) all deposit accounts[,] (iii) all equipment and inventory, and (iv) all proceeds from any of the foregoing.")

40.

Thus, Gulf Coast may collect any and all Collateral to satisfy Rig Worx's obligations.

41.

Finally, Rig Worx also expressly agreed in the RPA "to reimburse [Gulf Coast] on demand for: . . . the actual amount of all costs and expenses, including attorney's fees, which [Gulf Coast] may incur in enforcing this [RPA] and any documents prepared in connection herewith . . . ." *Id.*

10

at § 15.2; *see also id.* at § 14.1 (requiring Rig Worx to indemnify and hold Gulf Coast harmless "from and against all loss, claims and damage arising from . . . (ii) any action or inaction or liability of [Rig Worx] with respect to any Account, including any collection action . . . .") Therefore, Gulf Coast is entitled to reimbursement of all costs and expenses, including attorneys' fees, associated with the enforcement of the RPA.

42.

On September 3, 2020, prior to learning of the invalid and inaccurate nature of the Dispute Invoices, Gulf Coast sent a letter to Rig Worx, informing Rig Worx that the Disputed Invoices remained unpaid for more than ninety (90) days following their respective invoice dates and that the unpaid amount on the Disputed Invoices totaled $387,623.69 plus applicable fees. A true and correct copy of the Rig Worx Demand Letter is attached hereto as Exhibit "F."

43.

By and through the Demand Letter, therefore, Rig Worx formally demanded that Rig Worx repurchase all of the Disputed Invoices as required under Section 4.1 of the RPA. *Id.* at 1.

44.

The Demand Letter also warned that if Rig Worx "fail[s] to cause these amounts to be paid within five (5) business days of the date of this letter, [Gulf Coast] reserves it rights to institute formal legal proceedings to collect the amounts due to it by [Rig Worx] and its Guarantor." *Id.* at 1-2.

45.

While the Disputed Invoice Account Debtors agreed to pay and did, in fact, pay the full amount of some of the Disputed Invoices pursuant to the Settlement Agreement, Rig Worx has no

satisfied its obligations to Gulf Coast under the RPA as of the filing of this Petition, including, but not limited to, its obligation pay the full amount owed on the Unpaid Lasso Invoice.

## B. Guarantor' Obligations Under the RPA Guaranty

46.

Gulf Coast incorporates and adopts by reference the previous paragraphs as though alleged fully herein *in extenso*.

47.

On or around August 29, 2018, the Guarantor executed the RPA Guaranty Agreement (the "RPA Guaranty"), under which they "absolutely and unconditionally agrees to, and by these presents does hereby, guarantee the prompt and punctual payment, performance and satisfaction of [Rig Worx's] present and future RPA Obligations in favor of [Gulf Coast], as outstanding from time to time." *See* RPA Guaranty in favor of Rig Worx, LLC dated August 29, 2018, attached as Exhibit "G."

48.

The RPA Guaranty states that "[t]his Agreement shall be governed and construed in accordance with the substantive laws of the State of Louisiana." *Id.* at 3.

49.

"RPA Obligations," pursuant to the RPA Guaranty, means "individually, collectively, interchangeably and without limitation (i) all amounts owing by [Rig Worx] under [the RPA] . . . between [Rig Worx] and [Gulf Coast] . . . including all repurchase obligations thereunder, (ii) all costs and expenses incurred by [Gulf Coast] in connection with the collection of all or any part of the indebtedness and obligations owing by [Rig Worx] under the RPA . . . and (iii) all renewals,

extensions, modifications and rearrangements of the indebtedness and obligations owing by [Rig Worx] under the RPA." *Id.* at 1.

50.

The RPA Guaranty further provides that the Guarantor's "obligations and liability under [the RPA] shall be on a 'solidary' or 'joint and several' basis along with [Rig Worx] to the same degree and extent as if Guarantor[s] had been and/or will be a co-principal obligor and/or co-maker of [Rig Worx's] RPA Obligations. In the event that there is more than one Guarantor under this Agreement . . . Guarantor[s'] obligations and liability hereunder shall further be on a 'solidary' or 'joint and several' basis along with such other Guarantor, endorsers and/or sureties." *Id.*

51.

Finally, the RPA Guaranty provides that "[s]hould any event of default occur or exist under any of [Rig Worx] RPA Obligations in favor of [Gulf Coast], Guarantor[s] unconditionally and absolutely agree[] to pay [Gulf Coast] the then unpaid amount of [Rig Worx's] RPA Obligations in principal, interest, costs, expenses, attorneys' fees and other fees and charges." *Id.*

52.

On September 9, 2020, prior to learning of the invalid and inaccurate nature of the Disputed Invoices, counsel for Gulf Coast sent a letter to the Guarantor (the "Guarantor Demand Letter"). A true and correct copy of the Guarantor Demand Letter is attached hereto as Exhibit "H."

53.

The Guarantor Demand Letter notified the Guarantor that the Disputed Invoices remained unpaid for more than ninety (90) days following their respective invoice dates and that the unpaid amount on the Disputed Invoices totaled $387,623.69 plus applicable fees. *Id.* at 1.

13

54.

The Guarantor Demand Letter also reminded the Guarantor that, under the RPA Guaranty in favor of Rig Worx, she "absolutely and unconditionally guaranteed the prompt and punctual payment, performance and satisfaction of all of [Rig Worx's] 'RPA Obligations' . . . which includes all amounts owed by [Rig Worx] to [Gulf Coast] under the RPA, and therefore includes the prompt payment of the Current Obligation." *Id.*

55.

Gulf Coast then formally demanded that the Guarantor "bring this payment current within five (5) days of the date of this letter," and if they did not, Gulf Coast "will have several legal options available to it to collect these debts, including the obtaining of a money judgment and the use of applicable procedures to collect such judgment." *Id.* at 2.

56.

As of the filing of this Petition, the Guarantor has not brought Rig Worx's liability under the RPA current.

57.

Accordingly, Gulf Coast is entitled to exercise all powers granted to it under the RPA and the RPA Guaranty until all of Rig Worx's obligations have been paid in full.

### **COUNT I: BREACH OF CONTRACT**
### **(Against Rig Worx)**

58.

Gulf Coast incorporates and adopts by reference the previous paragraphs as though alleged fully herein *in extenso*.

59.

Pursuant to the terms of the RPA, Rig Worx is in breach of, and has defaulted on, the RPA in the following non-exclusive ways:

a) Failing to promptly notify Gulf Coast of known disputes regarding payment on the Disputed Invoices in violation of Section 9 of the RPA;

b) Continuing to warrant to Gulf Coast that the Disputed Invoices were valid, unconditionally owing, undisputed, and not subject to defenses, despite later having actual or constructive knowledge to the contrary, in violation of the representations and warranties in Sections 11.1.2 and 11.1.3 of the RPA; and

c) Failing to immediately notify Gulf Coast in writing of a known Ineligibility Event in violation of Section 11.1.1 of the RPA.

61.

The RPA also defines as an "Event of Default," the circumstances in which "any such guarantor fails to perform or observe any of such Guarantor['s] obligations to [Gulf Coast] . . . ." *See* Exhibit A at § 1. Thus, Rig Worx is also in breach of, and has defaulted on, the RPA because the Guarantor has failed to perform her obligations under the RPA Guaranty.

62.

Thus, Rig Worx is liable to Gulf Coast for all amounts and other remedies available under the RPA, including, but not limited to:

a) The amounts required for Rig Worx to repurchase all Purchased Accounts, together with all fixed discounts and variable discounts;

15

b) The unpaid amount of all obligations owed under the RPA, including without limitation the full amount of the Unpaid Lasso Invoice, costs, expenses, and attorneys' fees incurred as a result of all Events of Default and Rig Worx' breaches;

c) Pre-judgment and post-judgment interest;

d) Termination of the RPA pursuant to Section 12.2.1 of same; and

e) All other relief available under the RPA and at law.

## COUNT II: BREACH OF CONTRACT
### (Against the Guarantor)

63.

Gulf Coast incorporates and adopts by reference the previous paragraphs as though alleged fully herein *in extenso*.

64.

The Guarantor personally guaranteed, on a solidary basis, the prompt and punctual payment, performance, and satisfaction of Rig Worx' obligations under the RPA. In the event of default, the Guarantor "absolutely and unconditionally agree[d] to . . . guarantee the prompt and punctual payment, performance and satisfaction of [Rig Worx'] present and future RPA Obligations in favor of [Gulf Coast], as outstanding from time to time." *See* Exhibit H at 1.

65.

For the non-exclusive reasons set forth above, Rig Worx is in breach of, and has defaulted on, the RPA.

66.

Accordingly, because Gulf Coast asserted its rights under the RPA, the Guarantor is unconditionally and absolutely obligated to pay the outstanding amounts of Rig Worx' RPA Obligations, including without limitation the full amount of the Unpaid Lasso Invoice, the

repurchase price of all Purchased Accounts, principal, interest, costs, expenses, attorneys' fees, and any other damages sustained by Gulf Coast.

67.

Thus, pursuant to the RPA Guaranty, the Guarantor is also liable to Gulf Coast for all amounts and other remedies available under the RPA and RPA Guaranty, including, but not limited to:

a) The amounts required for Rig Worx to repurchase all Purchased Accounts, together with all fixed discounts and variable discounts;

b) The unpaid amount of all obligations owed by the Guarantor's solidary obligor, Rig Worx, under the RPA, including the full amount of the Unpaid Lasso Invoice, together with any costs, expenses, and attorneys' fees incurred as a result of all Events of Default and breaches by Rig Worx;

c) Pre-judgment and post-judgment interest;

d) Termination of the RPA pursuant to Section 12.2.1 of same; and

e) All other relief available under the RPA and RPA Guaranty, and at law.

### COUNT III: ATTORNEY'S FEES
### (Against Rig Worx and the Guarantor)

68.

Gulf Coast incorporates and adopts by reference the previous paragraphs as though alleged fully herein *in extenso*.

69.

Rig Worx expressly agreed in the RPA "to reimburse [Gulf Coast] on demand for: . . . the actual amount of all costs and expenses, including attorney's fees, which [Gulf Coast] may incur in enforcing this [RPA] and any documents prepared in connection herewith . . . ." See Exhibit A

at § 15.2; *see also* Exhibit A at § 14.1 (requiring Rig Worx to indemnify and hold Gulf Coast harmless "from and against all loss, claims and damage arising from . . . (ii) any action or inaction or liability of [Rig Worx] with respect to any Account, including any collection action . . . .")

70.

The Guarantor expressly agreed in the RPA Guaranty that "[s]hould any event of default occur or exist under any of [Rig Worx] RPA Obligations in favor of [Gulf Coast], Guarantor unconditionally and absolutely agrees to pay [Gulf Coast] the then unpaid amount of [Rig Worx's] RPA Obligations in principal, interest, costs, expenses, attorneys' fees and other fees and charges." *See* Exhibit G at 1.

71.

Therefore, Rig Worx and the Guarantor are liable, jointly and *in solido*, for all costs and expenses incurred by Gulf Coast associated with the enforcement of the RPA, including attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Gulf Coast respectfully prays that after due delays and proceedings are had, there be judgment rendered in favor of Gulf Coast and against Rig Worx and the Guarantor:

1. Declaring the RPA terminated pursuant to Section 12.2.1 of same;
2. Ordering Rig Worx and the Guarantor to repurchase all Purchased Accounts under the RPA, including the Unpaid Lasso Account, together with all fixed discounts and variable discounts;
3. Holding Rig Worx and the Guarantor liable, jointly and *in solido*, in breach of contract for the amount of all obligations owed under the RPA, along with all damages incurred

by and amounts owed to Gulf Coast under same, together with costs, expenses, and attorneys' fees incurred by Gulf Coast;

4. Pre-judgment and post-judgment interest;

5. Recognizing Gulf Coast's interests in all Collateral, Accounts, and other property securing the obligations of Rig Worx and the Guarantor;

6. All other relief available under the RPA and RPA Guaranty; and

7. For any other general and equitable relief as the nature of this case may permit.

DATED: April 9, 2021

Respectfully submitted,

/s/ James M. Garner
JAMES M. GARNER #00792312
JOSIE N. SERIGNE (*pro hac vice* admission pending)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112-4046
Telephone:   (504) 299-2100
Facsimile:    (504) 299-2300
E-Mail:         jgarner@shergarner.com
                    jserigne@shergarner.com

**ATTORNEYS FOR GULF COAST BANK AND TRUST COMPANY**